No. 23-4209

# United States Court of Appeals for the Fourth Circuit

_____

**UNITED STATES OF AMERICA**,
*Appellee,*

**v.**

**TIMOTHY WILLIAM BAVARO**,
*Appellant.*

_____

*On Appeal from the United States District Court
for the Eastern District of North Carolina*

## RESPONSE BRIEF OF THE UNITED STATES

MICHAEL F. EASLEY, JR.
*United States Attorney*

BY:   DAVID A. BRAGDON
JOHN L. GIBBONS
*Assistant United States Attorneys*

150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone: (919) 856-4530

*Attorneys for Appellee*

# TABLE OF CONTENTS

Table of Authorities ....................................................................... iii

Statement of Jurisdiction .............................................................. 1

Statement of Issues......................................................................... 2

Statement of Facts......................................................................... 3

Summary of Argument................................................................... 29

Argument ....................................................................................... 30

**I.    Defendant's motion to withdraw his guilty plea was correctly denied because the *Moore* factors all weigh against letting him go back on his plea.**

A.    Standard of Review................................................. 30

B.    Discussion of Issue. ............................................... 30

1.    Defendant's statements under oath establish the guilty plea was knowing and voluntary. ........................... 31

2.    Defendant admitted guilt under oath and in his letters to the court, and only later made strategic and noncredible claims of actual innocence...................... 33

3.    Defendant waited nearly eight months before indicating to the court he wished to withdraw his guilty plea, and counsel waited fourteen months before filing the motion. ................................... 35

4.    Defendant's Rule 11 colloquy and plea agreement demonstrate he had the close assistance of competent counsel....................................... 36

5.    Letting Defendant withdraw his guilty plea would prejudice the government and further waste the judiciary's resources. ......................................... 38

6.    The guilty plea was not "constitutionally infirm."
........................................................................ 41

Conclusion ............................................................... 43

Certificate of Compliance

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Blackledge v. Allison*,
  431 U.S. 63 (1977) ................................................................ 30

*Christian v. Ballard*,
  792 F.3d 427 (4th Cir. 2015) ............................................... 30

*Fields v. Att'y Gen. of Md.*,
  956 F.2d 1290 (4th Cir. 1992) .............................................. 31

*Stokes v. Stirling*,
  64 F.4th 131 (4th Cir. 2023) ................................................ 30

*United States v. Alexander*,
  948 F.2d 1002 (6th Cir. 1991) .............................................. 35

*United States v. Bowman*,
  348 F.3d 408 (4th Cir. 2003) ................................... 31, 32, 37, 38

*United States v. Boyd*,
  5 F.4th 550 (4th Cir. 2021) .................................................. 30

*United States v. Craig*,
  985 F.2d 175 (4th Cir. 1993) ..................................... 35, 36, 37

*United States v. DeFusco*,
  949 F.2d 114 (4th Cir. 1991) ................................................ 36

*United States v. Faris*,
  388 F.3d 452, 460 (4th Cir. 2004) .................................... 33, 39

*United States v. Hammond*,
  821 F. App'x 203 (4th Cir. 2020) (unpublished) ....................... 35

*United States v. Lemaster*,
  403 F.3d 216 (4th Cir. 2005) .......................................... 31, 38

iii

*United States v. Lineback,*
   330 F.3d 441 (6th Cir. 2003) ...................................................... 41

*United States v. Moore,*
   931 F.2d 245 (4th Cir. 1991) ........................................... passim

*United States v. Morrison,*
   967 F.2d 264 (8th Cir. 1992) ...................................................... 41

*United States v. Nicholson,*
   676 F.3d 376 (4th Cir. 2012) ...................................... 30, 31, 32

*United States v. Nunez-Garcia,*
   31 F.4th 861 (4th Cir. 2022) ...................................................... 42

*United States v. Santiago-Rivera,*
   805 F.3d 396 (1st Cir. 2015) ...................................................... 40

*United States v. Sparks,*
   67 F.3d 1145 (4th Cir. 1995) ...................................................... 37

*United States v. Ubakanma,*
   215 F.3d 421 (4th Cir. 2000) ...........................................31, 32

*United States v. Williamson,*
   701 F. App'x 212 (4th Cir. 2017) ........................................... 36

## Statutes

18 U.S.C. § 1952(a)(2) .................................................................... 3

18 U.S.C. § 1952(a)(3) .................................................................... 3

18 U.S.C. § 2421(a) ................................................................... 3, 33

18 U.S.C. § 2422(a) ........................................................................ 3

18 U.S.C. § 3231 ............................................................................ 1

18 U.S.C. § 3553(a) ......................................................... 26, 27, 28

iv

18 U.S.C. § 3742(a) ......................................................................... 1

28 U.S.C. § 1291 ............................................................................. 1

## Rule

Fed. R. Crim. P. 11(d)(2)(B) ...................................................... 35

## <u>STATEMENT OF JURISDICTION</u>

Defendant Timothy William Bavaro appeals from a judgment of conviction following a guilty plea. Jurisdiction to the district court was established by 18 U.S.C. § 3231.

Jurisdiction to this Court is provided by 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The judgment was entered on March 20, 2023, and Defendant filed a timely notice of appeal on March 27, 2023.

## STATEMENT OF ISSUES

1.    Whether Defendant waived the issue he presents by formally withdrawing his motion to withdraw his guilty plea.

2.    Whether denying Defendant's motion to withdraw his guilty plea would have been an abuse of discretion.[1]

---

[1]    Defendant also presents several sentencing issues. *See* Brief at 1–2. The government does not address those issues here because Defendant waived the right to appeal them, as set forth in the government's concurrently filed Motion to Dismiss in Part.

# STATEMENT OF FACTS

## Procedural History

A grand jury indicted Defendant for: three counts of inducing, enticing, or coercing an individual to travel in interstate commerce to engage in prosecution, in violation of 18 U.S.C. § 2422(a); six counts of knowingly transporting an individual in interstate commerce to engage in prostitution, in violation of 18 U.S.C. § 2421(a); and one count of using the Internet to promote, manage, or carry out a prostitution business, in violation of 18 U.S.C. § 1952(a)(2) & (a)(3). J.A. 34–40. By plea agreement, Defendant pleaded guilty to two counts (Counts Four and Nine) of knowingly transporting an individual to engage in prostitution; the United States agreed to dismiss the eight remaining charges. J.A. 42; J.A. 208; J.A. 215.

The district court sentenced Defendant to 120 months' imprisonment on Count Four and 120 months' imprisonment on Count Nine. J.A. 440. Of the 120 months for Count Nine, 60 would run concurrently with the Count Four sentence, and 60 would run consecutively to the Count Four sentence. J.A. 440 In total, Defendant received a 180-month sentence. J.A. 440.

## Rule 11 Hearing

Defendant pleaded guilty in March 2021. Under oath, Defendant testified he could read, write, speak, and understand English. J.A. 42. Neither the government nor defense counsel (Attorney 2[2]) had any concerns about Defendant's competence to enter the guilty plea. J.A. 43. Under oath, he told the court he had enough time to meet with Attorney 2 and prepare for the Rule 11 hearing, and that he was satisfied with Attorney 2's work. J.A. 43.

The district court explained to Defendant that he "ha[s] the right to have [his] case tried by a jury," and would be presumed innocent in any such trial. J.A. 43. The government would "ha[ve] to bring witnesses into court to testify in [Defendant's] presence and in the presence of a jury." J.A. 44. At a trial, Defendant "could object to improper evidence, cross-examine the witnesses against [him], present witnesses and evidence." J.A. 43. However, the court explained, "[w]hen you plead guilty, you give those rights up. There won't be a trial. The case will be decided on your admission of guilty. Do you understand that?" J.A. 44. "Yes, sir," Defendant answered. J.A. 44. The court followed up: "Are you willing to waive those rights by entering a plea of guilty?" J.A. 44. "Yes, sir." J.A. 44.

Following Defendant's confirmation that he understood the trial rights he gave up with a guilty plea, the court explained Defendant's charges and possible punishments. J.A. 44–45. Defendant confirmed that he had "read over this plea

---

[2]  Because Defendant had six successive attorneys in this case, to avoid confusion this brief refers to them as Attorneys 1 through 6.

agreement" and "underst[oo]d what [he had] agreed to." J.A. 45. He said no one "threatened" or "forced" or "pressured [him] in any way in order to get [him] to plead guilty," and the decision to plead guilty was his alone. J.A. 45. The court also reiterated "the important parts of the agreement," which included Defendant's "waiv[ing] [his] right to appeal,"[3] "waiv[ing] [his] right to contest the conviction in any post-conviction proceeding," and "waiv[ing] [his] right to have a jury decide the facts." J.A. 45–46. Defendant pleaded guilty to Counts Four and Nine as charged, and said he was actually guilty. J.A. 46. The court accepted the guilty and scheduled a sentencing hearing. J.A. 50.

## Letters to District Court

### June 2021

Over two months after the Rule 11 hearing, the district court received a letter from Defendant asking the court to "review [his] case." J.A. 52. "There are things in my case, details I find important, being ignored." J.A. 52. Defendant said he did not "want [his] ignorance of the law taken advantage of." J.A. 52. At the same time, he emphasized, "I've already taken a plea, and I don't want you to think I don't accept responsibility for my plea." J.A. 52; *see also* J.A. 53 ("Before I go any further Your Honor I want you to know I completely except [sic] responsibility for my actions."). "I did drive through states with girls whom were prostituting," he wrote, but claimed he "never received my discovery. Not

---

[3]    As the government explains in its concurrently filed Motion to Dismiss in Part, Defendant's appeal waiver precludes his sentencing arguments.

5

even a re-dacted [sic] version." J.A. 53. At no point in this letter did Defendant indicate a desire to withdraw his guilty plea.

<u>October 2021</u>

Six and a half months post- plea, the district court received another letter from Defendant. J.A. 65. "I believe I was taken advantage of on my plea agreement," he claimed. J.A. 65. "I did not see my plea agreement until maybe 5 minutes before stepping into your courtroom." J.A. 65. "There was things I did not agree with," but Attorney 2 "quickly brushed me off, and said I had to plea [sic] guilty or not guilty that do because I had to. He said you were not willing to continue my arraignment any further." J.A. 65. "But I was not given any time to go over my plea agreement, my lawyer at that time said if there was anything I didn't agree with we could dispute it at sentencing." J.A. 65. "Your Honor, I would like to re-negotiate my plea agreement" because "I do not find anything in this plea agreement to be beneficial." J.A. 65. He claimed, "I have still to this day never received even the re-dacted version of my discovery," and Attorney 2 "ha[d] only ever went over the videos from the interrogation room and a few statements." J.A. 66. "I've been trying my best to share my concerns with my lawyers," but "I continue to be brushed off." J.A. 66. Because he "demande[d]" Attorney 2 "gather esculpatory [sic] evidence that is out there showing my innocence of some of these inhansements [sic]," counsel withdrew. J.A. 66. "Now I'm having similar issues with the lawyer I currently have," Attorney 3. J.A. 66. In short, "I do not want to waive any of my rights Your Honor. I would like to

not be forced into this plea agreement. I would like to re-negotiate this plea agreement. It does not benefit me in any way." J.A. 66.

A week later, the district court received another letter. J.A. 71. At the time of his plea hearing, Defendant reiterated, he told counsel that "we needed more time to go over my discovery." J.A. 71. In response, counsel told him the district court "w[as] not pushing the court date off anymore and that a plea had to be in that day." J.A. 71. "He stated, we can take the plea to buy some time, go over the discovery more, th[e]n change the plea if it came to that." J.A. 71. "I did not see this 'plea agreement' till maybe 5 minutes before stepping into your court-room . . . ." J.A. 71. Defendant began to escalate his accusations, stating that in his next meeting with defense counsel after the Rule 11 hearing "[h]e was a completely different person, with a completely different agenda. He accomplished me signing that plea agreement. So his job to him was done . . . ." J.A. 71. "So, he lied to me" about being able to "change the plea." J.A. 72. At the same time, however, he claimed, "I'm not looking to withdraw my plea but I would like to re-negotiate my plea." J.A. 72. As for Attorney 3 ('this new guy"), "I want him off my case. We already had big disagreements . . . ." J.A. 73. "If the prosecutor don[']t want to re-negotiate this deal, th[e]n I would like to just take this to trial" with a new appointed attorney. J.A. 74.

<u>November 2021</u>

Seven months post-guilty plea, the district court received another letter, this time about Attorney 3. J.A. 75. Attorney 3 "was not supportive of my request to withdraw my 'plea deal,'" and he and Defendant "do not see eye-to-eye about my case." J.A. 75. "I've noticed he already sees me as guilty. All he spoke of was negative possibilitys [sic] in the outcome of the [plea] withdrawal." J.A. 75.

Two weeks after that, the district court received yet another letter "[j]ust to update my situation." J.A. 76. "I told [Attorney 3] I wanted him off my case" but "haven't heard anything since." J.A. 76. "I also told him I wanted to withdraw this 'plea deal.' I have not heard back about [that] either. I feel the issues I'm having with these lawyers is ridiculous." J.A. 77. Attorney 3 "showed he does not care about my case," and "if possible I would like someone with experience in my type of charges in case I have to take this to trial." J.A. 77.

<u>January 2022</u>

Ten months post-plea, the district court received a pro se "Motion to Withdraw Plea." J.A. 78. The week before the plea hearing, Defendant claimed, he told Attorney 2 they needed to "finish going over the discovery." J.A. 78. Attorney 2 "stated that [the court] was not continu[ing] the date" and "I needed to go ahead and plea [sic] guilty or not guilty." J.A. 78. On the hearing date, Attorney 2 "brought plea in to Defendant moments before having to step into the court room. Did not give Defendant sufficient time to review the plea, even though the Defendant had plans on going to trial. Counsel told Defendant to

accept the plea to buy more time to go over discovery and that the plea could be withdrawn at a later date." J.A. 79. "The Defendant request herein to go to trial." J.A. 80.

## February 2022

Eleven months post-plea, Defendant submitted another pro se document titled "Complaint." J.A. 82. "Since my arrest in Dec of 2019, I have not had effective counsel." J.A. 82. He now said Attorney 2 "tricked" him "into signing a plea." J.A. 82. "I was never given my discovery. Not one motion I asked my counsel to file, has been filed." J.A. 83. "I have been through 4 counsels who have waisted [sic] my time . . . ." J.A. 83. "My only concern now is for my counsel to put in the motion to withdraw this plea, which I've been trying to get done all the way back to [my first attorney]. Unless its preparing for this motion, there is nothing else to talk about. Period." J.A. 83. "I will not go further with my case till this plea has been withdrawn, and I have a copy of my discovery." J.A. 83.

Around the same time, the district court received an additional letter from Defendant. "I have been trying to withdraw my plea since April/May of 2021." J.A. 85. "I would like a court hearing to discuss all current issues," and "I believe the prosecution is interfering with my counsel. I don't see any other reasons for my previous counsel's choosing to be ineffective." J.A. 85.

Later that month, the district court received another pro se "Motion to Withdraw Plea." J.A. 86. "I accepted a plea advised by my counsel [Attorney 2] . . . who told me to take the plea, that it would buy us more time to go over

the discovery." J.A. 86. "He advised me to take a plea, just to buy us time to go over the discovery more. He told me he was denying the first plea from the government, and had me sign the second plea . . . maybe 5 minutes before entering the court room." J.A. 86.

### March 2022

Nearly a year post-plea, the district court received an additional letter. "Why am I still not represented? Why am I still in jail if nothings being done with my case? Is this legal?" J.A. 86. "Is this sit still/pause in my case a way to buy the D.A. time for something? This doesn't seem fair and just to me." J.A. 86.

That month, the district court received an additional letter from Defendant. J.A. 88. "I received a letter from the Clerk of Court's office telling me" new counsel (Attorney 5) had been assigned. J.A. 88. "I been trying to withdraw my plea since April/May of 2021. I would think my defense would be ready to assist me in this process. So far I've seen the complete opposite. I can not [sic] think of a reasonable reason my defense attorney would be ignoring me. And obviously not wanting to help me withdraw this plea." J.A. 88. "I don't understand why this is being delayed," Defendant wrote, "but I'm sure the D.A. has a part in this." J.A. 89. "I'm not firing [Attorney 5]. Just informing you on the new news." J.A. 89.

## Motion to Withdraw Guilty Plea

In May 2022 (more than a year after Defendant's plea hearing), Attorney 5 filed Defendant's motion to withdraw the guilty plea. J.A. 98–103. The motion did not include any affidavits, and instead relied on Defendant's letters to the court stating "he had not had adequate time to review his discovery" and "his plea was not entered knowingly and intelligently." J.A. 100. Using the factors set out in *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991), it argued that "Defendant has made constant and consistent claims that he was not adequately informed of all of the facts and circumstances surrounding his case before he entered his guilty plea." J.A. 101–102. "While it is true that [Defendant] entered his guilty plea close to fourteen months ago, he would also point out that he almost immediately expressed his displeasure with his guilty plea to his then attorney [Attorney 2] . . . ." J.A. 102. "While [Defendant] has had the assistance of competent counsel, he would assert that he has not had *close* assistance" because "the short window, between the addition of his new counsel and his [Rule 11 hearing], was simply not enough time to adequately review his discovery and the issues in his case." J.A. 102. The motion also pointed to "the lack of communication with his attorneys" and "the constant ingress and egress of attorneys" as reasons for letting him withdraw the guilty plea. J.A. 103.

The United States opposed. "First, and most importantly, the defendant made a knowing and voluntary plea of guilty pursuant to a properly conducted Rule 11 proceeding . . . ." J.A. 105. Defendant "has admitted his guilt on several different occasions, has signed a written plea agreement, and makes no factual

claim that he did not commit the acts described in the plea agreement." J.A. 105. Furthermore, Defendant didn't even mention the idea of withdrawing his motion until "almost eight months after he entered his plea." J.A. 105. "[T]he defendant clearly benefitted from the close assistance of competent counsel, evidenced by his own statements under oath and the benefits he received from the plea agreement." J.A. 106. Finally, letting Defendant withdraw his guilty plea would waste the government's and court's resources. And it would prejudice the women he victimized, "who have been told for over fourteen months that they would not have to testify and have thus believed that they could move on with their lives." J.A. 106.

In August 2022, the court held a hearing on the withdrawal motion, at which Defendant was present. J.A. 127. Attorney 5 said he had "spoken with [Defendant] again today during the break and he has indicated to me that he would like to withdraw his motion to withdraw his guilty plea." J.A. 127. The Defendant, Attorney 5 said, "understands that from there, we would move forward to a sentencing date to be set by the Court, likely in the near future." J.A. 127. The court directly addressed Defendant:

> THE COURT: Mr. Bavaro, is that right –
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: – you want to stay with the case the way it is now?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You're sure of that?

THE DEFENDANT: At this moment, yes, sir.

THE COURT: Well, this moment is forever.

THE DEFENDANT: Well, I think I'm going to stick with going to sentencing.

THE COURT: I can't hear you.

THE DEFENDANT: I'm going to go to sentencing, sir.

J.A. 127–128. On that basis, the court issued an order "deem[ing]" the motion "withdrawn" and ordering the case to "proceed to sentencing." J.A. 136.

### Attorney 5's Motion to Withdraw as Counsel

In September 2022, the district court held a hearing regarding Attorney 5's motion to withdraw as counsel. J.A. 138. "I am the fifth appointed lawyer in this case," Attorney 5 said. J.A. 139. Defendant "had been insistent upon filing a Motion to Withdraw his Guilty Plea," but the day of the hearing Attorney 5 "went down and spoke with [Defendant] . . . and he indicated to me that he no longer wanted to proceed with his Motion to Withdraw his Guilty Plea." J.A. 139. "So we came into Court," and "[h]e withdrew his Motion." J.A. 139.

Apparently later that same day Defendant had written Attorney 5 "a very long letter, handwritten letter that I received a couple of days later." J.A. 139–140. In the letter, Defendant outlined "how he intends to proceed during the sentencing hearing," which Attorney 5 "worked through" with Defendant. J.A. 140. Later in the letter, Defendant "indicate[d] that when this is over he intends to initiate a lot of lawsuits," and "he hopes that he doesn't have to add me to that. And then later in his letter he communicated that if certain things happen

during the sentencing hearing he will, in fact, sue me along with the government." J.A. 140. Although Attorney 5 "would really like to see this case to the end," because of the lawsuit threat he felt obligated to file the withdrawal motion but took "no position" on it. J.A. 141–142.

Defendant addressed the court himself, saying "I think there's a lot of miscommunication here." J.A. 142. "I've been locked up for . . . almost three years," but "I have not seen my discovery yet." J.A. 142. "I've seen maybe three videos, a little bit of three videos that [Attorney 2] has shown me, and that's it." J.A. 142. "That's why I've been trying to withdraw my plea for so long, because [Attorney 2] told me, he said, take the plea and just buy time because (inaudible) anymore." J.A. 143. "He said, take a plea, buy time and we'll go over your discovery afterwards and you can withdraw your plea at a later date if you still choose to do so." J.A. 143.

> THE COURT: You're telling me that [Attorney 2], who was your attorney at one time told you to plead guilty and then you could later withdraw it; it won't be a problem?
>
> MR. BAVARO: Yes, he did.
>
> THE COURT: I find that hard to believe.
>
> MR. BAVARO: I wish I didn't take the advice. We wouldn't be here today.
>
> THE COURT: You would have pled not guilty all the way?
>
> MR. BAVARO: I've been trying to see my discovery. That's what I've been trying to do. I don't understand

14

> what I'm even pleading guilty to. Because I don't – I
> don't understand the accusations against me.

J.A. 143.

Defendant then told the court about the factual inaccuracies he believed

the PSR contained, and his objections to having to "register as a sex offender

when all I did was drive a car." J.A. 144. He also said his prostitutes were "not

victims," and "I'd rather call them unindicted co-defendants." J.A. 144.

The prosecutor clarified that Defendant "negotiated a plea," and the plea

agreement in that case "was not the first plea offer the government made." J.A.

145. As to Defendant's complaints about not viewing discovery documents, the

prosecutor clarified the United States "has absolutely fulfilled its discovery obli-

gations," but "[t]here is a protective order in this case that the Court had entered

not permitting copies of discovery to be left with the defendant given the sensi-

tive nature of some of the facts at issue, identities of the victims, images, things

of that nature." J.A. 145. This protective order was entered "with the consent of

both parties." J.A. 145.

The Court indicated it was ready for sentencing as scheduled the following

week, saying "this is a terrible case, and he's completely lying to me and down-

playing it." J.A. 148. Defendant again addressed the court:

> Your Honor, I can go to trial. I would rather go to trial.
> I mean this is crazy. Again, I did not – I didn't even want
> to take the plea to begin with. I'd rather risk my chances
> at trial. At least I would have a chance to get the facts
> out, present at least cross-examination. I can't do any-
> thing with this. I'm at a disadvantage. Of course it looks
> horrible. I said to myself it looks horrible. When I read it

> I couldn't believe what I was reading. They didn't even
> tell you I participated in prostitution. There's a lot of stuff
> they don't have in that PSR.

J.A. 148.

The government noted that "even today the Defendant has not denied the crime to which he pled. He disagrees with the cross-referencing" based on "the information in the PSR, as is his right to do." J.A. 149. "And he is free to present any evidence he wants at sentencing or question or cross-examine any witness the government puts on at sentencing. But his arguments ultimately come down to sentencing arguments," and he "has never once denied the entire case." J.A. 149–150. To the contrary, "he has written letters to the Court" admitting the transportation crimes and "filed his objections to two different versions of the PSR, in which he admits to the elements." J.A. 150.

At this point, the court decided to "let [Attorney 5] out of the case and appoint a different lawyer and continue the sentencing," because "[t]his is going to be a problem case no matter what." J.A. 150. When the court tried to explain what Defendant's guidelines range would have been but for the plea deal (360 months to life), Defendant responded, "You're being biased now." J.A. 151.

## Additional Letters and Motions

### September 2022

Defendant's rhetoric continued escalating after the September hearing. Shortly after, the district court received another pro se filing titled "Motion to

16

Withdraw Plea." J.A. 154. Defendant asked "[t]hat the U.S. voluntarily withdraw plea within seven (7) days of the service of this request upon the United States," and "if the United States fails or refuses to provide the requested action, within the time period prescribed by law, that the court set a hearing to address the motion to withdraw plea." J.A. 154.

A week later, Defendant sent the district court another letter. "I would like my rights to trial." J.A. 156. "From this point on, any lawyer assigned to my case will be asked to withdraw for 'conflict of interest' if they are not going to defend me and my claims to the best of their ability. I am not guilty of these charges." J.A. 156. Defendant also began to accuse the prosecutors, district court, and his successive attorneys of conspiring to get him to plead guilty: "I have been assigned lawyers that do not want to do their jobs. And when I demand them to do their job [the court] allows them to withdraw from my case, ironic isn't it? [The court] showed complete bias at the court hearing . . . ." J.A. 156. "I don't want to take this plea, never did." J.A. 156. Attorney 2 "did his job at tricking me into taking this plea and then withdrew from my case." J.A. 157. "I argued about it for over a year with lawyer after lawyer who didn't want to do anything about it." J.A. 157. Defendant suggested that Attorney 5 (who actually filed Defendant's requested motion to withdraw) was planted by prosecutors "to get their job done." J.A. 157. "And they got [Attorney 5] and man was he good," "kick[ing] me a bunch of bulls**t to accomplish his mission and he accomplished it. I withdrew the plea withdrawal, something I didn't really want to do." J.A. 157. Attorney 5's "job was obviously to stop me from withdrawing

17

my plea. Job done, now he can find some lame reason to withdraw from my case, so I'll be someone elses [sic] problem." J.A. 157. The district court "can get off of my case next if he's going to continue to act the way he did" at the hearing. J.A. 157. He closed with asking for a copy of the transcript from the most recent hearing, "the transcripts for the grand jury hearing when I was indicted on state charges in 2020," and "again I want to go to trial I want all my rights! Period. It's my right. No more bulls**t." J.A. 158.

<u>October 2022</u>

The next month, the district court received yet another letter from Defendant. J.A. 159. "I have not been through my discovery, and I haven't had any 'effective' assistance of counsel." J.A. 159. He claimed the protective order in his case had been entered "so I can't effectively fight my case." J.A. 159. "I'm being wrongly accused." J.A. 159. The prosecutor, he said, "knows I'm not guilty of these charges," and the district court "has shown bias [sic] opinion." J.A. 159. "For the record once again, I am innocent. I want to go to trial to prove my innocence." J.A. 160. The "prosecutor . . . is holding evidence that proves my innocence and none of my lawyers so far has done anything in my defense. Even your [sic] [the court] obviously against me. All you, the prosecutor and my lawyers want are convictions and for people to stroke your little egos. I wont [sic] do that." J.A. 160. "So your [sic] all trying to force me into a plea I obviously never wanted to take. And keeping me from getting my discovery? What are you people trying to hide? Violating my due process rights to hide it too?"

J.A. 160. Attorney 6 "has wrote me. I wrote him back, and left him a message on his voice mail stating that if he was not going to do everything he could as my counsil [sic] to get me to trial then he can remove himself from my case for a conflict of interest. That goes for any lawyer appointed to Timothy William Bavaro." J.A. 161. "You people aren't going to keep telling me just anything to help your agenda but keep saying f**k me and my agenda." J.A. 161.

About two weeks later, Defendant sent another letter to the district court. "I no longer respect you as a judge after our Sep 7th 2022 encounter in Elizabeth City. I also want the court transcripts of that hearing." J.A. 162. "Your [sic] definitely not a truth seeker . . . . It saddens me that you're a judge." J.A. 162. "Again, I want to go to trial. I'm innocent." J.A. 162.

The following week's letter to the court claimed "nothing" had "been done about any of" his complaints, "except for me being called a liar by [the district court]." J.A. 163. Attorney 5's withdrawal "shows me he had no intentions of defending me," and the court "was okay with that obviously." J.A. 163. "I didn't want to take this 'plea deal.'" J.A. 164. Attorney 2, "my appointed counsel at that time told me to sign the plea to buy us more time to go over my discovery." J.A. 164. "Me and [Attorney 5] had an obvious conflict of interest. Even though I didn't know it at the time. [Attorney 5] did not want me to go to trial. Even though I did." J.A. 164. Attorney 5 "worked hard at trying to change my mind about going to trial." J.A. 164. "Needless to say he successfully achieved his and the prosecutions [sic] goal . . . to stop me from withdrawing

19

the plea." J.A. 165. The prosecutor "knows I'm not guilty, so he's actually desperate for me to take this plea," and "I also feel like [the district court] is a part of this now." J.A. 165–166.

## Status Conference and Hearing

After transferring the case to another judge in the Eastern District, in January 2023 the court held a status conference with Attorney 6 and the prosecutor. J.A. 168. The court said, "I've read a good deal of the background in this case. I understand that we've gone back and forth," and "I understand where our likely status is." J.A. 169. "I read the objections to the presentence report which suggest that [Defendant] has not objected to anything that constitutes the underlying facts that establish guilt . . . as to the charges to which he entered a plea. He vigorously contests sentencing facts." J.A. 169–170.

The court said that it expected the factual issues at the sentencing to be "fully litigated" and the parties should prepare for the hearing with that understanding. J.A. 170. Defendant "also made statement[s] in the hearing . . . that [the previous district court judge] found to be noncredible about statements made to him by [Attorney 2]." J.A. 170. "I'm treating that as law of the case." J.A. 170. Furthermore, the court noted, "I tend to believe it highly dubious that [Attorney 2] would have made those statements to [Defendant], knowing what I know about [Attorney 2]. More than dubious; virtually impossible is where I think my position would be as to those statements having been made." J.A. 170. Defendant might have thought he heard them, the court acknowledged, "[b]ut

whether or not [Attorney 2] made them, I find that so unlikely as to constitute impossible." J.A. 170–171.

The court then asked the parties for their status. Attorney 6 said he was in a "quandary" because "there are very viable sentencing points to be made on [Defendant's] behalf," but Attorney 6 could not "get him to focus on those because of this other issue with the motion to withdraw the guilty plea." J.A. 171. Defendant "very much wants to tell Your Honor about why he wants to withdraw his plea." J.A. 171. In Attorney 6's opinion, that was not an option. "I have researched everything. I've talked to [Attorney 5]. I've talked to [Attorney 2]. I've gone through everything. There's no basis for me to ethically file a motion to withdraw his plea in light of his withdrawing that prior." J.A. 171.[4]

The United States noted "it's coming up on two years since [Defendant] entered into his plea agreement. I think the record is clear. There was a fulsome colloquy at that point. I would agree 100 percent that there is no basis in law or fact for a motion to withdraw the plea." J.A. 172. The government also raised the victims, who "ha[d], candidly, been jerked around a little bit" regarding the sentencing hearing. J.A. 172. "[A]t least two of the victims advised that they intended to be present at the sentencing." J.A. 172. The government agreed Defendant's "arguments are sentencing arguments. And we're happy to address

---

[4]   After Attorney 6 met with Defendant, Defendant sent the district court another letter implying that Attorney 6 was part of the supposed conspiracy between the prosecutor, the district court, and Attorneys 2 through 5. J.A. 177–179.

those at sentencing. But I think it may require . . . a conversation with eh Court to realize that that's where we're at . . . ." J.A. 173–174.

The district court decided to schedule a hearing for Defendant to address the court. J.A. 174. The court made clear that there was no motion to withdraw the guilty plea pending before the court. J.A. 174. "However, in the interest of justice, this Court will have a colloquy with him regarding the status of the motion, the absence of any likelihood for success on the merits of that motion, and to counsel him to engage fully with his attorney to prepare for his sentencing, which is going to happen." J.A. 174. "[I]t's an unusual posture," the court admitted, "and one I don't want to get into as a routine practice with difficult clients." J.A. 174. "But this client is now on his . . . third judge and his sixth lawyer," and the court needed to communicate "it's not us, it's you." J.A. 174.[5] And the court made clear: "[t]here are no more government expense lawyers in this case." J.A. 175. At the same time, the court declined to set a firm scheduling date before Defendant addressed the court, because it was "possible that his sentencing hearing does not proceed" based on his statement, albeit "unlikely." J.A. 175–176.

At the January 2023 hearing for Defendant to address the district court, the court advised him "we're here today because your attorney has notified me that while he cannot in good faith as counsel make a motion to withdraw your

---

[5]  The case was briefly (for one day) reassigned to another district court judge in the same district before being reassigned again to the judge that ultimately sentenced Defendant. *See* J.A. 24.

guilty plea, it is your significant desire to talk to me about that." J.A. 181. The court had "reviewed all the prior proceedings in this case, and I reviewed everything that's been filed to date." J.A. 181. "I'm happy to listen to you to tell me anything that has changed, but I don't believe there's any basis that I can find as we now stand" to grant the motion. J.A. 181. "So I'm happy to listen to you." J.A. 181.

Defendant said, "I just want justice in my case, Your Honor. I don't feel like this plea deal is justice. It was never my intentions to take the plea deal. It was just – I'm not gonna say [Attorney 2] lied, but I just feel there may have been some miscommunications, misunderstandings. But it was really never my intentions to take this plea deal." J.A. 181–182. The district court was understandably skeptical:

> You stood before a federal judge. He asked you if you understood that you were entering a plea of guilty. You told him you understood you were entering a plea of guilty. He asked you if you had talked to your lawyer. He asked you if you disagreed with entering it. He asked you if you understood all the elements of the crime. You said yes to all of those things, and you have stated that you transported people across state lines for these purposes. The Court finds no basis for withdrawing the guilty plea . . . .

J.A. 182. The court advised Defendant to work with Attorney 6 to prepare for his sentencing hearing; Attorney 6 believed there were good arguments to be made at sentencing. J.A. 182–183. "But this Court finds no basis anywhere in the record for withdrawing the guilty plea." J.A. 183.

Defendant continued to press his argument, repeating his account of what Attorney 2 had told him before the plea hearing. J.A. 183–184. "I really feel like I'm being set up. I feel like [the prosecutor] is interfering with my lawyers." J.A. 185. "I understand what's in writing and all of that," but "that doesn't mean I'm guilty of it." J.A. 185. "I took the plea to buy time to go over the discovery more to prepare for trial." J.A. 188. The court rejected those arguments based on the plea agreement and the plea colloquy. J.A. 185–186.

The government reminded the court of the August 2022 hearing at which Defendant formally withdrew the motion Attorney 5 filed for him. J.A. 188–189. Defendant claimed "[i]f you listen to it, you can tell I was not really wanting to not go through with that," but felt he had to because Attorney 5 "wasn't trying to withdraw my plea." J.A. 189–190. "The whole time I spoke with [Attorney 5], the whole time he was my lawyer, all he talked about was the mistake I was making, you're gonna spend the rest of your life in federal prison." J.A. 190. The court rejected these arguments as well: "The Court finds that you had a fully briefed motion to withdraw your guilty plea," but that Defendant personally appeared in court and "withdrew that motion." J.A. 191. The court "told you at that time that that was a final decision," and "that is now binding on you." J.A. 191.

At that point, Defendant asked to end the hearing: "Look. You ain't here for justice. None of y'all are here for justice. We can go ahead and move on. It is what it is." J.A. 191. "I recommend you work with [Attorney 6] to prepare for sentencing," the court said. J.A. 191.

A few days after this hearing, Defendant mailed another letter to the district court asking to withdraw his guilty plea. J.A. 193. "If I am denied again, I will be filing a lawsuit on" the prosecutor, both district court judges, Attorney 2, Attorney 5, and Attorney 6. J.A. 193. "I tried to do this the nice way. You all are making this more difficult then [sic] it has to be." J.A. 193. "I'm giving 14 days to get a response on this matter." J.A. 193. The district court construed the letter as "Defendant's *fifth* request for withdrawal of his plea in this case, two of which have been fully heard." J.A. 195. Although "[t]he court is under no obligation to consider documents filed pro se by a represented party," the district court denied it anyway because "Defendant provides no new relevant information and the court continues to find no basis for withdrawal of Defendant's plea in this case." J.A. 195.

## Sentencing Hearing

Sentencing finally took place in March 2023, two years after Defendant's plea. J.A. 302. Attorney 6 presented Defendant's factual objections and made arguments against applying the cross-references and enhancements the PSR recommended. J.A. 307–308. In response, the government presented witness testimony; Attorney 6 cross-examined those witnesses at length, focusing on several key details for the court's consideration. J.A. 310–350 (testimony of Defendant's half-brother); J.A. 350–387 (testimony of investigating agent). Although Defendant indicated he wished to testify, the district court gave him a preview of

"[w]here I am right now" on sentencing and warned of the possibly adverse consequences of Defendant's testifying should he "testif[y] what I find to be falsely and inconsistent," J.A. 388–390. Attorney 6 took a short break to go over the guidelines calculations with Defendant, who ultimately declined to testify. J.A. 391–392.

The parties presented arguments on the objections; the court sustained some of Defendant's objections while denying others. *See* J.A. 400–402, J.A. 408–409, J.A. 414–416. Attorney 6 presented § 3553(a) argument and Defendant offered a short allocution. J.A. 421–424.

One of Defendant's victims was present and gave a statement. "I'm a victim of human trafficking," she said. J.A. 424. "In the beginning, I thought they were my friends, trying to help me, but quickly realized they were not my friends at all. They were drugging me with Xanax and setting me up with hundreds of men I never met or agreed to meet with." J.A. 425. "They made thousands of dollars off of me and barely fed me." J.A. 425. "They kept my phone from me, and they told me my mom didn't care about me and that she never even called, when the whole time she was looking for me and calling." J.A. 425. Defendant's actions continued to haunt her: "To this day I have PTSD. I can't go anywhere alone. I'm always watching over my shoulders. I don't take my child to big public places. I don't trust anyone, and I question everything. I'm scared to leave my daughter with anybody because I don't know what could happen." J.A. 425. Addressing Defendant directly, the victim said "[y]ou've damaged me, and I hope you never get the chance to do this to anybody else again. And I really

26

hope that you rot in here." J.A. 426. The court described this victim statement as "heartbreaking." J.A. 433.

The prosecutor also read excerpts from two statements submitted by another of Defendant's victims. "[T]hrough those years, I felt nothing but like a rag doll . . . ." J.A. 426. "I would be scared for my life and be very nervous because I didn't want to get hurt. And there's been a few times where I have got hurt." J.A. 427. "All that has destroyed me . . . ." J.A. 427. Another victim "had ended up messaging me on Facebook, says that [Defendant] wants me to write him. I told her [the other victim] no, that part's done. And write him for what? So he can get out? Please. It's destroyed me." J.A. 427.

Finally, the government read a third victim's statement: "The situation caused a lot of damage to me mentally because of everything. I can't even go out in public without having bad anxiety." J.A. 428. "I also can't be close to a man when out in public, and dating has become a no for me until I get help." J.A. 428. "As far as my relationship with my parents and everyone that knows, I feel like they at me different or even with disgust. I know I look at myself and feel disgusted." J.A. 428. "At times I hate myself for everything I went through. I'm also afraid to be taken and put back in the same situation." J.A. 428.

After reading these statements, the government presented a short § 3553(a) argument and asked for 240 months' imprisonment. J.A. 428–430. The court imposed 180 months' imprisonment total. J.A. 439. That included 120 months on Count Four and 120 months on Count Nine. J.A. 440. Of the 120 months for Count Nine, 60 would run concurrently with the Count Four

sentence, and 60 would run consecutively to the Count Four sentence. J.A. 440. The court also announced it "it would impose the same sentence as an alternative variant sentence" in case it made any guidelines errors. J.A. 450. That alternative variance was "in light of all the section 3553(a) factors that I have discussed," and was "the sentence sufficient but not greater than necessary in this case." J.A. 450.

# SUMMARY OF ARGUMENT

Facing an indictment with ten charges and the possibility of a 115-year prison sentence, Defendant pleaded guilty to two counts of transporting women across state lines for prostitution. His attorney (Attorney 5) moved to withdraw the guilty plea, and the court was set to hear and rule on the motion when Defendant withdrew it. His withdrawal waived that claim, so his argument is not reviewable on appeal.

Furthermore, denying the withdrawal motion on the merits was not an abuse of discretion. Defendant's sworn statements at the Rule 11 colloquy—that he had adequate time to discuss his plea agreement with Attorney 2 and was satisfied with Attorney 2's work—are a formidable barrier to his post-hoc contrary assertions. He has not, however, shown any clear error in the court's factual findings (on two separate occasions) that Defendant's claims about Attorney 2 were not credible and that Defendant's plea was knowing and voluntary. Furthermore, Defendant delayed too long before trying to withdraw his plea; he had effective legal representation throughout the case; allowing him to withdraw his plea would prejudice the government and harm his victims; and a plea withdrawal would inconvenience the district court, which has already wasted significant resources accommodating this mercurial Defendant's antics.

29

## ARGUMENT

**I.    Defendant's motion to withdraw his guilty plea was correctly denied because the *Moore* factors all weigh against letting him go back on his plea.**

**A.    Standard of Review.**

The Court reviews a denial of a motion to withdraw a guilty plea only for abuse of discretion. *United States v. Nicholson*, 676 F.3d 376, 383 (4th Cir. 2012).[6]

**B.    Discussion of Issue.**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system." *Christian v. Ballard*, 792 F.3d 427, 444 (4th Cir. 2015). However, "the advantages that they provide to all concerned 'can be secured . . . only if dispositions by guilty plea are accorded a great measure of finality.'" *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 71 (1977)).

For these reasons, "Rule 11 'authorizes the withdrawal of a guilty plea before sentencing if the defendant can show a fair and just reason for requesting the withdrawal.'" *Nicholson*, 676 F.3d at 383. Whether such a reason for with-

---

[6]    Normally, "[a] party that raises an objection and then explicitly withdraws it waives that objection," *United States v. Boyd*, 5 F.4th 550, 554 (4th Cir. 2021), and abandoned or waived issues are "unreviewable," *Stokes v. Stirling*, 64 F.4th 131, 141 (4th Cir. 2023). But because the district court ultimately denied Defendant's motion on the merits, *see* J.A. 195, the government addresses whether that denial was an abuse of discretion.

drawal exists is a matter for the district court's discretion. *United States v. Uba-kanma*, 215 F.3d 421, 424 (4th Cir. 2000). This Court set out the relevant considerations for exercising that discretion in *United States v. Moore*, 931 F.2d 245, 248 (4th Cir. 1991), which include: (1) "whether the defendant has offered credible evidence that his plea was not knowing or not voluntary"; (2) whether the defendant has credibly asserted his legal innocence"; (3) any delay in seeking to filing the plea-withdrawal motion; (4) "whether defendant has had the close assistance of competent counsel"; (5) prejudice to the government; and (6) inconvenience for the court and waste of judicial resources.

The district court correctly denied Defendant's motion, and Defendant offers no valid basis for reversal. Every factor identified in *Moore* cuts against Defendant's request.

### 1.   Defendant's statements under oath establish the guilty plea was knowing and voluntary.

"The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted," *Nicholson*, 676 F.3d at 384, because "courts must be able to rely on . . . statements made under oath to accept a guilty plea," *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003). "In the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established." *United States v. Lemaster*, 403 F.3d 216, 221–222 (4th Cir. 2005); *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992)

("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy."). Even a defendant who later says he "lied outright during his guilty-plea colloquy" is held to those statements. *Bowman*, 348 F.3d at 412. A Rule 11 hearing thus "leaves a defendant with a very limited basis" to seek withdrawal, because "it raises a strong presumption that the plea is final and binding." *Nicholson*, 676 F.3d at 384 (alteration omitted).

Defendant has never, in the district court or on appeal, asserted his Rule 11 colloquy was deficient or inadequate. He says only that the statements he made were untrue, and that is not enough. In *United States v. Ubakanma*, the defendant sent a letter to the court after pleading guilty "assert[ing] that he is innocent and that he had pleaded guilty due to his attorney's intimidation and poor advice." 215 F.3d 421, 424 (4th Cir. 2000). However, during the Rule 11 hearing the defendant "acknowledged under oath that the factual stipulations underlying his plea . . . were true," "that no one had coerced him into pleading guilty." *Id.* Thus, the Court determined, the defendant's "conclusory post-plea assertions that his plea was not knowing and voluntary," "made in his unsworn letter[s] to the court, fail to overcome the barrier of the sworn statements made at his Rule 11 hearing." *Id.* The same is true here. In fact, it is especially true here because the district court specifically found—on two separate occasions—that Defendant's post-plea factual claims were not credible.

## 2. Defendant admitted guilt under oath and in his letters to the court, and only later made strategic and noncredible claims of actual innocence.

The next *Moore* consideration is "whether the defendant has credibly asserted his legal innocence." 931 F.2d at 248. At no time before the hearing on his motion to withdraw the guilty plea did Defendant assert his actual innocence. His pro se letters to the court did not challenge the truthfulness of his factual admissions to the elements of his offenses. He confirmed in his Rule 11 colloquy that he was, in fact, guilty of the crimes charged. J.A. 46. And his June 1, 2021 letter said he "accept[s] responsibility for [his] plea," he "completely [accepts] responsibility for [his] actions," he "did drive through states with girls whom were prostituting," and he "accept[s] responsibility for driving across state lines with intentions of prostitution." J.A. 52–53. Where a defendant makes "credible admissions of guilt," there is no abuse of discretion in holding him to the guilty plea. *United States v. Faris*, 388 F.3d 452, 460 (4th Cir. 2004).

In the 17 months between his plea and the withdrawal hearing in August 2022, Defendant never asserted actual innocence. Instead, he claimed innocence "of some of these [e]nhan[c]ements," J.A. 66, and objected to any enhancement based on use of force, *see* J.A. 241–244, J.A. 271–273. But Counts Four and Nine, to which Defendant pleaded guilty, are Mann Act violations, 18 U.S.C. § 2421(a), which does not require force, coercion, threats, or placing another person in fear. At best, Defendant's denials were sentencing arguments, and he made and partially prevailed on those arguments at sentencing.

33

But those arguments did not alter Defendant's repeated admissions to the facts establishing his convictions: transporting individuals across state lines for prostitution. His two sets of PSR objections (submitted August 2021 and June 2022) explicitly admitted these facts *thirteen* separate times: "[Defendant] admits his role as a prostitute and as a person who transported persons who were engaged in prostitution . . . ." J.A. 241–243, J.A. 271–273; *see also* J.A. 241 ("He admits that he did receive compensation for driving other members of the organization for the purposes of engaging in prostitution . . . ."); J.A. 271 ("[Defendant] admits and acknowledges, for the purpose of this paragraph and all subsequent paragraphs, that he was involved and participated in the transportation of individuals who were engaged in prostitution . . . ."). At the August 2022 hearing, the prosecutor correctly pointed out that "even today the Defendant has not denied the crime to which he pled. He disagrees with the cross-referencing . . . ." J.A. 149. And when the court directly asked Defendant if he "would have pled not guilty" to all the charges, Defendant deflected rather than asserting innocence: "I've been trying to see my discovery. That's what I'm trying to do." J.A. 143.

In September 2022, one of Defendant's letters first attempted to claim innocence. *See* J.A. 156 ("I am not guilty of these charges."). He repeated that assertion in his letters from that point on. *See* J.A. 159 ("I'm being wrongly accused" and the prosecutor "knows I'm not guilty of these charges."); J.A. 162 ("I'm innocent."); J.A. 165–166 (The prosecutor "knows I'm not guilty, so he's actually desperate for me to take this plea."). But in the January 2023 hearing,

34

the district court squarely rejected any notion that Defendant's late-breaking claims of innocence were credible. *See* J.A. 185–187. And their timing suggests strategic motive. Regardless, because Defendant made no claim of actual innocence before his motion hearing, this factor would have weighed heavily against allowing him to withdraw his plea. That remains true today.

### 3. Defendant waited nearly eight months before indicating to the court he wished to withdraw his guilty plea, and counsel waited fourteen months before filing the motion.

The third *Moore* factor considers whether Defendant unnecessarily delayed his request to withdraw the plea. Rule 11(d)(2)(B)'s object is to ensure a defendant can withdraw a hastily entered or unadvised plea; it does not allow defendants to undo a plea that he ultimately decides was a suboptimal tactical decision. *See United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991). Thus, an interval of only eight weeks between a guilty plea and a withdrawal motion "clearly militate[s] against withdrawal." *United States v. Craig*, 985 F.2d 175, 178 (4th Cir. 1993); *see also Moore*, 931 F.2d at 248 ("wait[ing] six weeks before giving notice of . . . intent to move to withdraw" was a "delay" cutting against withdrawal).

Nearly eight months passed before Defendant's November 2021 pro se letter indicated, for the first time, that he wished to withdraw the guilty plea. *See* J.A. 76–77. Of course, a district court is not required to consider documents filed pro se by a represented party, *see, e.g.*, *United States v. Hammond*, 821 F. App'x

203, 207 (4th Cir. 2020) (unpublished); none of Defendant's attorneys submitted a formal motion until May 2022, fourteen months post-plea, J.A. 98–103. *Craig* and *Moore* found much shorter delays were already too long. The same is necessarily true here.

### 4. Defendant's Rule 11 colloquy and plea agreement demonstrate he had the close assistance of competent counsel.

Defendant also failed to show the fourth *Moore* factor (close assistance of competent counsel) favored withdrawal. His "indication under oath in the Rule 11 proceeding that he was 'entirely satisfied with the services of [his] attorney,' and the district court's ensuing finding that his plea was knowing and voluntary 'constitute a formidable barrier'" to his assertions now he did not have close assistance of counsel. *Craig*, 985 F.2d at 179 (quoting *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991)); *see also United States v. Williamson*, 701 F. App'x 212, 216 (4th Cir. 2017) (unpublished) (when a defendant answers affirmatively to the court that he was "completely satisfied with counsel" and had an "adequate opportunity to consult with his lawyer" at the Rule 11 hearing, this *Moore* factor cuts against withdrawal).

Defendant's withdrawal motion itself even admitted he "had the assistance of competent counsel," J.A. 102, as he clearly did: six court-appointed attorneys represented him in succession, several of whom are among the most respected and distinguished members of the Eastern District's criminal defense bar. He emphasized instead that he did not have their "*close* assistance." J.A.

102. The Fourth Circuit has clarified, however, that there is no daylight between effective assistance generally and *Moore*'s "close assistance of competent counsel" language. "A defendant can demonstrate the absence of close assistance of counsel for purposes of the *Moore* test only by showing that 'her counsel's performance fell below an objective standard of reasonableness,'" the usual effective-assistance standard. *United States v. Sparks*, 67 F.3d 1145, 1153 (4th Cir. 1995); *see also Bowman*, 348 F.3d at 416 (similar).

Regardless, Defendant never mentioned any concerns about his representation during his Rule 11 hearing—and, in fact, said the exact opposite. Under oath, he confirmed he had enough time to meet with Attorney 2 to prepare for the hearing and was satisfied with Attorney 2's work. J.A. 43. These statements are "a formidable barrier" to Defendant's withdrawing his guilty plea. *Craig*, 985 F.2d at 179.

The plea agreement Attorney 2 negotiated is further evidence of the close assistance Defendant received. During the nine months between Defendant's initial appearance and Rule 11 hearing, Attorney 2 engaged in meaningful plea negotiations with the government, which made multiple plea offers. J.A. 118. In the resulting agreement Defendant signed, the government promised to dismiss eight of the indictment's ten charges in exchange for Defendant's guilty plea to Counts Four and Nine. Had Defendant been convicted of all ten indicted counts, the court could have sentenced him up to 115 years' imprisonment. J.A. 264, ¶ 107. As in *Bowman*, 348 F.3d at 416, this reduction in sentencing exposure confirms Attorney 2 effectively represented Defendant.

The agreement secured significant benefits on Defendant's two conviction counts as well. As the PSR indicated, Defendant's guidelines range for the two counts was 360 months to life. J.A. 292, ¶ 104. Thanks to Defendant's plea agreement, however, a statutory cap limited his punishment to 240 months—*ten years* below the guidelines range's low end. J.A. 292, ¶ 104. Had Defendant been convicted of even one additional offense, he could have received a life sentence.

In light of these considerations, Defendant's post-hoc assertions are not enough. His plea agreement avoided a potentially calamitous outcome at trial and secured significant sentencing benefits for his two counts of conviction. And his unsworn letters cannot overcome his contemporaneous statements, under oath, to the district court that he had sufficient time to prepare for the hearing and was satisfied with Attorney 2's work. This *Moore* factor cuts against withdrawal.

### 5.   Letting Defendant withdraw his guilty plea would prejudice the government and further waste the judiciary's resources.

*Moore*'s fifth and sixth factors (often considered together) are whether withdrawing a guilty plea would prejudice the government or waste judicial resources. 931 F.2d at 248. Both weigh heavily against letting Defendant withdraw his plea.

This Court has repeatedly reiterated the guilty plea's importance to the effective and efficient administration of criminal justice. *See, e.g.*, *United States v. Lemaster*, 403 F.3d 216, 219–220 (4th Cir. 2005); *Bowman*, 348 F.3d 408. In this

case, the government was prepared to proceed to trial in March 2021 following a lengthy investigation. That investigation included numerous documents and thousands of pages of discovery. J.A. 120. It included forensic exams of electronic devices, social media accounts, and prostitution-advertisement sites. J.A. 120. It involved numerous witnesses, including cooperating defendants, law enforcement officers from multiple agencies, and several victims. J.A. 120.

Sex-trafficking victims are often unusually difficult to locate and bring to court for trial; that is especially true when they are homeless, addicted to narcotics, or still involved in prostitution. In some cases, the government can guarantee a victim's availability only after litigation or issuing a material witness warrant. The government was prepared to proceed with its witnesses in March 2021 and would have done so again had the district court let Defendant renege on his plea agreement. But the resources necessary to locate and prepare the witnesses—especially Defendant's victims—following more than two years' delay would be substantial. They would have been substantial last June when the government opposed Defendant's motion before the district court, and would be even more so today.

Giving Defendant a do-over would inconvenience the court and be thoroughly wasteful. Two federal judges have spent significant time on this case, including in a complicated and contested sentencing. Of course, any prosecution necessarily expends government and judicial resources. But this Defendant's antics have wasted them to an unusual degree. *See Faris*, 388 F.3d at 460 ("[T]he court could reasonably conclude that Faris had manipulated the system in a

39

wasteful manner."). He has burned through six appointed attorneys, paid with public funds. In large part, that turnover apparently stems from Defendant's refusal to cooperate with attorneys on anything besides a withdrawal motion.[7] And then—after Attorney 5 finally acquiesced and filed the motion, after the government put together an opposition brief, after the court scheduled a hearing, and after marshals transported Defendant to the courthouse—Defendant simply walked in and withdrew his long-awaited motion. But the story wasn't over even then, apparently; he again raised his withdrawal request shortly after and challenged the validity of the *withdrawal of his withdrawal motion*. *See* J.A. 189–190. It's a never-ending rabbit hole, and an expensive one.

The Court should also account for the harm to Defendant's victims arising from the unique dynamics of sex-trafficking crimes. Courts may properly consider the impact on sex-crime victims in determining whether a defendant has shown a "fair and just" reason for withdrawing a guilty plea. For example, in a child pornography case, the First Circuit highlighted "the burden that [a defendant's] victims would face were they forced to relive the trauma inflicted upon them so long after they believed this case had ended." *United States v. Santiago-Rivera*, 805 F.3d 396, 398 (1st Cir. 2015). The Eighth Circuit has likewise said that the trauma of a sexual-abuse victim's trial preparation, coupled with the

---

[7]    The cherry on top was Defendant's assertion below that "the constant ingress and egress of attorneys" following his plea—a circumstance attributable only to him—justifies withdrawal. J.A. 103.

prospect of forcing the victim to "endure this emotional process again" if a defendant's plea were withdrawn, constituted "real prejudice" weighing against withdrawal. *United States v. Morrison*, 967 F.2d 264, 269 (8th Cir. 1992); *see also United States v. Lineback*, 330 F.3d 441, 444 (6th Cir. 2003) (affirming "district court's factual determination that the prejudice suffered by the [child-pornography] victims" from a plea withdrawal "would result in prejudice to the [g]overnment").

The court's acceptance, in March 2021, of Defendant's guilty plea offered his victims at least a measure of finality. For over two years now, they believed they will never have to see him again; they can leave Defendant in the past and do their best to piece their shattered lives back together. Giving Defendant a do-over means they would suddenly need to testify at a future trial and revisit those dark times in their lives. It might even be a step back in their recovery process. As the First, Sixth, and Eighth Circuits have acknowledged, that harm to Defendant's victims counts as prejudice to the government.

For all these reasons, the fifth and sixth *Moore* factors weigh strongly against giving Defendant a do-over.

### 6. The guilty plea was not "constitutionally infirm."

In addition to arguing he showed a "fair and just reason" for withdrawing his guilty plea under Rule 11, Defendant also says "[a] review of the entire record demonstrates that [his] plea was not knowing and voluntary." Brief at 20. That is so, he says, because Attorney 2 "told him that he could withdraw the

41

plea later" and so Defendant "did not understand when he pleaded guilty that he could not easily withdraw that plea later." Brief at 20.

Two separate district court judges already rejected this factual assertion, based on their familiarity with Attorney 2's work. At the hearing on Attorney 5's motion to withdraw as counsel, the court asked Defendant, "[y]ou're telling me that [Attorney 2] . . . told you to plead guilty and then you could later withdraw it; it won't be a problem?" J.A. 143. "Yes, he did," Defendant responded. J.A. 143. "I find that hard to believe," the court replied. J.A. 143. The district court was even more explicit at the later status conference: "knowing what I know about [Attorney 2]," "I tend to believe it highly dubious that [Attorney 2] would have made those statements." J.A. 170. "More than dubious; virtually impossible." J.A. 170. "I find that so unlikely as to constitute impossible." J.A. 171. This twice-made factual finding is subject only to clear-error review, *see Moore*, 931 F.2d at 250, and Defendant makes no effort in his lone paragraph of argument on this point, *see* Brief at 20, to show it was clearly erroneous.

Nor could he show that. There is clear error only if "review of the entire record" leaves the Court "with the definite and firm conviction that a mistake has been committed." *United States v. Nunez-Garcia*, 31 F.4th 861, 865 (4th Cir. 2022). The entire record here, on the other hand, *supports* the district court's double findings. Specifically, Attorney 6 (another of the district's most accomplished and respected defense attorneys) said at the status conference that he "researched everything," "talked to [Attorney 5]," and "talked to [Attorney 2]," and "[t]here's no basis for me to ethically file a motion to withdraw." J.A. 171.

42

Defendant's own attorneys, in other words, seemed to agree with the court that Attorney 2 never made such statements. Defendant thus fails to show clear error, and he offers no other reason why his guilty plea might be unknowing or involuntary.

*          *          *

"In short," Defendant's brief concludes, he "wants to go to trial, and this Court should allow a trial." Brief at 24. Absent his plea agreement, Defendant could have gone to trial. But he gave up that right when he pleaded guilty, and he has not met the high burden to overcome that plea's finality.

### <u>CONCLUSION</u>

For the foregoing reasons, the Court should affirm.

Respectfully submitted, this 1st day of September, 2023.

> MICHAEL F. EASLEY, JR.
> *United States Attorney*
>
>
> BY:   */s/ John L. Gibbons*
>         JOHN L. GIBBONS
>         *Assistant United States Attorney*
>         150 Fayetteville Street, Suite 2100
>         Raleigh, North Carolina 27601
>         Telephone: 919-856-4530

DAVID A. BRAGDON
*Assistant United States Attorney*

*Of Counsel*

43

## <u>CERTIFICATE OF COMPLIANCE</u>

1.   Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I hereby certify that this brief meets the page or type-volume limits of Rule 32(a) because, exclusive of the portions of the document exempted by Rule 32(f), this brief contains:

☐ _____   Pages *(may not exceed 30 pages for a principal brief or 15 pages for reply brief, pursuant to Rule 32(a)(7)(A))*; or

☒   10,910   Words *(may not exceed 13,000 words for a principal brief or 6,500 words for reply brief, pursuant to Rule 32(a)(7)(B))*.

2.   Further, this document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in Microsoft Word 2016 using fourteen-point *Calisto MT*, a proportional-width typeface.

*/s/ John L. Gibbons*
JOHN L. GIBBONS
*Assistant United States Attorney*